Bloomington Coca-Cola Bottling Company v. Commissioner.
Bloomington Coca-Cola Bottling Co. v. Commissioner
Docket No. 21084.
United States Tax Court
1950 Tax Ct. Memo LEXIS 128; 9 T.C.M. (CCH) 666; T.C.M. (RIA) 50190; August 10, 1950
*128 Petitioner, the owner and operator of a bottling plant, found the plant too small for its needs and decided to construct a new plant on land which it acquired. It employed an architect to prepare plans, and a contractor to erect the new building at an agreed cost of $72,500. Contractor agreed to accept petitioner's old bottling plant at a value of $8,000 on the construction cost of the new building. Under this agreement the old plant was conveyed to the contractor in 1939. Held: Petitioner's disposition of its old plant constituted a sale thereof, giving rise to gain or loss, and not an exchange of property for like property within section 112 (b) (1), Internal Revenue Code, and not an abandonment. Respondent's treatment of the transaction as a sale in computing petitioner's excess-profits net income for 1939 as one of its base years in the computation of its excess-profits taxes for 1943 and 1944 is sustained. *129 Ralph H. Schuette, Esq., Citizens Savings Bank Bldg., Paducah, Ky., for the petitioner. Lester M. Ponder, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: The respondent has determined deficiencies in excess-profits taxes of petitioner for the calendar years 1943 and 1944 in the respective amounts of $8,045.19 and $8,492.13. The basic question presented is whether the respondent erred in determining that in the taxable year 1939 the petitioner sustained a loss in the amount of $22,886.79 upon the sale of its bottling plant, deductible from gross income of that year for the purpose of computing its excess-profits *130 tax credit based on average base period net income. Certain facts were stipulated and these are included herein by reference. Facts in addition to those stipulated, hereinafter set out in our findings of fact, are found upon evidence presented at the hearing. Findings of Fact Petitioner is an Illinois corporation engaged in the bottling of Coca-Cola, with principal offices at Bloomington, Illinois. Its excess-profits tax returns for the calendar years 1943 and 1944 were filed with the collector for the eighth Illinois district. Schedule B of petitioner's 1943 and 1944 excess-profits tax returns shows 1939 base period excess-profits net income as follows: 1. Normal tax (or special class) net
income
$2,278.25
2. Net capital loss used in computing
line 1
2,000.00
4. Net loss from sale or exchange of
property other than capital assets
deducted in computing line 1 (for
taxable years beginning after De-
cember 31, 1937)
18,811.34
31. Excess-profits net income
$23,089.59
Respondent adjusted petitioner's 1943 and 1944 excess-profits net income for the base period year 1939 as follows: Excess-profits net income for base pe-
riod year 1939 - return
$23,089.59
Deductions: (a) Loss on assets
22,886.79
Excess-profits net income as adjusted
$ 202.80
*131 Petitioner, in 1930, acquired a bottling plant at 301 Douglas Street, Bloomington, Illinois, at a cost of $36,000. The allocation of this cost as $30,500 to buildings and $5,500 to land is not in dispute. In 1938 petitioner entered into a contract with the John Felmley Company, general contractors, for the construction of a new bottling plant upon property owned by the petitioner. This contract contains, inter alia, the following provisions: "ARTICLE 1. SCOPE OF THE WORK - The Contractor shall furnish all of the materials and perform all of the work shown on the Drawings and described in the Specifications entitled General work for the Bottling Plant for the Bloomington Coca-Cola Bottling Company, Inc., Bloomington, Illinois, prepared by Edgar E. Lundeen and Dean F. Hilfinger, Architects, 602 Corn Belt Bank Building, Bloomington, Illinois, acting as and in these Contract Documents entitled the Architect; and shall do everything required by this Agreement, the General Conditions of the Contract, the Specifications and the Drawings. "ARTICLE 2. TIME OF COMPLETION - The work to be performed under this Contract shall be commenced immediately and shall be substantially completed *132 within two hundred working days. The work shall be done in such a way and at such times as to interfere the least possible with the work of other contractors on the premises. In default of carrying on the work as described above, and completing the work at the time specified, the Contractor shall be responsible to the Owner for all loss which the Owner may suffer as a consequence of such delay as liquidated damages, and in no sense as a penalty. It is mutually agreed that the Architect is to be the judge as to whether the work has been done in the manner stated above or not. It is understood that the Contractor shall not be held responsible for delays in the completion of the work caused by his being unable to buy or get delivered materials by reason of Government restriction or strikes, or for causes which, in the Architect's judgment are beyond his control. "ARTICLE 3. THE CONTRACT SUM - The Owner shall pay the Contractor for the performance of the Contract, subject to additions and deductions provided therein, in current funds as follows: Seventy-two thousand five hundred dollars ($72,500.00). Of the Contract Sum the sum of sixty-four thousand five hundred dollars ($64,500.00) *133 shall be in cash payments made as hereinafter determined, and the remainder shall consist of the building and lots known as Lot 3, except the South 35 feet thereof, in Block 3 in K. H. Fell's Second Addition to the City of Bloomington; also Lot 2, in Block 3, except the South 35 feet, in K. H. Fell's Second Addition. "The Owner guarantees to the Contractor abstract title to said described premises, brought down to date, showing a merchantable title in Owner, free and clear of any and all encumbrances, with the taxes for the year 1938 to be paid by the Owner. "Warranty Deed in due form of law, conveying said premises to John B. Felmley, shall be delivered to the said John B. Felmley, together with possession of said premises upon completion of this contract. "Where the quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the Owner or the Contractor, there shall be an equitable adjustment of the Contract to prevent such hardship. "ARTICLE 4. PROGRESS PAYMENTS - The Owner shall make payments on account of the Contract as provided therein, as follows: "On or about the tenth *134 day of each month eighty per cent of the value, based on the Contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the first day of that month, as estimated by the Architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to eighty per cent of the Contract price. The Contractor agrees to furnish an affidavit to the Owner when each certificate for payment is submitted, and before each payment is made, certifying that all bills for labor and materials upon which payment is requested are paid. "Proper deed to the building and lots as hereinbefore described shall be a part of the final payment. A certificate for the final payment shall be issued as soon after the contract is completed as the Contractor satisfies the Owner that there are no liens or claims for liens existing against any part of the work for labor or material furnished under this agreement by the Contractor." The new plant was completed in 1939 and the deed to the old plant delivered by the petitioner to the contractor in accordance with the terms of the contract. *135 Petitioner, in its 1939 return, reported this transaction as follows: Lot 301 Douglas Street
Cost July 1930
$ 5,500.00
Sold April 30, 1939
1,424.55
Loss
($ 4,075.45)
Limitation
($ 2,000.00)
Property at 301 Douglas Street
Building, Cost July 1930
$30,500.00
Depreciation on building to April
30, 1939
5,113.21
Net Book Value April 30, 1939
$25,386.79
Sold April 30, 1939
6,575.45
Loss
($18,811.34)
The difference between the contract amount of $72,500 and the amount of $64,500, as set forth in the contract for the construction of the new building, or $8,000, was allocated, $1,424.55 to the lot and $6,575.45 to the building. Depreciation in the amount of $1,977.36, computed at two per cent on a reported cost of $98,864.29, was claimed by petitioner as a deduction on buildings for each of the years 1943 and 1944, on its income tax returns for those years. The building in which petitioner carried on its operations prior to the construction of its new building was old and of such arrangement that it was old and of such arrangement that it was impossible to remodel or reconstruct into a larger building adequate to take care of petitioner's increasing *136 business. Outside space had to be rented to repair and paint coolers. The capacity of the bottling equipment used in the old building was 60 cases per hour, or monthly capacity of approximately 10,400 cases. The machinery for bottling used in the old plant was inadequate for petitioner's increased needs, and adequate machinery could not be housed in the old building. None of the old machinery was transferred to the new building, it being equipped with new machinery with a capacity of 240 cases per hour. Petitioner had, in the old plant, bottled both Coca-Cola and carbonated soft drinks of various flavors. Its operations in the new building were restricted wholly to the bottling of Coca-Cola. Opinion It is petitioner's contention that the disposition of its old plant in 1939 constituted an exchange of that plant for property of a like kind, upon which no gain or loss is recognized under section 112 (b) (1) of the Internal Revenue Code; [1] that its treatment of this transaction on its return for that year as a sale resulting in a deductible loss was in error; and that it is entitled to adjust its excess-profits net income for the year 1939 to eliminate the *137 loss reflected on its return for that year and thus increase its net income for that year, and to increase the cost of its new building for purposes of depreciation by the amount of the depreciated cost to it of its old bottling plant. In the alternative it contends that if the transaction in question did not constitute an exchange of the old plant for the new, the facts justify a finding that the old plant was abandoned and that the loss sustained was by reason of such abandonment, and its excess-profits net income for the base year 1939 should be increased by the elimination of the loss by reason of section 711 (b) (1) (E), Internal Revenue Code. [2]
*138 The primary question presented is whether or not the transfer by petitioner, under the terms of the contract for the building of this new building, of the old premises owned and occupied by it to the contractor as a payment on account, constituted an exchange between the petitioner and the contractor of the old building for the new. Petitioner contends, and we agree, that if there was in fact an exchange it would still fall within section 112 (b) (1), supra, even though the exchange was not exactly equal, some cash having been paid as "boot" by one of the parties. George E. Hamilton, 30 B.T.A. 160; W. H. Hartman Co., 20 B.T.A. 302. We can not see, however, under the facts here presented, that such a situation existed in the present case. Here it is shown that the petitioner owned a bottling plant which was inadequate for its needs, decided to itself build a new plant, and employed a contractor to construct the plant in accordance with plans prepared by its architect and upon land owned by it. The contractor was to furnish material, labor and supervision for the completion of the building in accordance with the plans and specifications for a total *139 consideration of $72,500. Of this sum $64,500 was to be paid in cash and the contractor agreed to accept petitioner's old building at a valuation of $8,000 as a payment on account. Here the contractor was not the owner of the land upon which the new building was constructed, never owned the new building, and never conveyed the new building to the petitioner. It is apparent to us from an examination of the record that there was never any thought in the minds of the parties that the contract constituted an exchange. The president of the petitioner testified that having arranged for the construction of its new building it had no use for the old, and wished to dispose of it, and that it occurred to him that he might be able to do so by having the contractor employed to build the new building accept it at a certain figure on the cost of construction. In addition to this it is clear that the petitioner never considered at the time that any exchange had occurred, as it reported the transaction on its return for that year as a sale of the old property at a loss for a consideration of $8,000 and took the deduction against income permitted in such a case. It is our conclusion that the transaction *140 in question constituted a sale and not an exchange of property for like property upon or loss under section 112 (b) (1), supra Our conclusion in this respect also answers petitioner's alternative contention that the transaction in question constituted an abandonment of the old bottling plant. The old plant was sold for a consideration of $8,000, as we have found; it was not abandoned. There are no facts established justifying a finding of abandonment, or that the loss was due to obsolescence. The old plant was an operating plant at the time petitioner moved to its new building, and its use as a bottling plant could have been continued. The testimony of petitioner's president was not that the plant was abandoned, but that its sale was determined upon. A claim of loss consequent upon the abandonment of property must be supported by clear and convincing proof of intention to abandon and discard the property. TennesseeConsolidated Coal Co., 24 B.T.A. 369; Collin v. United States, 57 Fed. Supp. 217. The record contains nothing to sustain the argument of abandonment, *141 and the facts established are to the contrary. See Hygrade Food Products Corporation v. Commissioner, 144 Fed. (2d) 115. Our conclusion that the transaction here in question did not fall within section 112 (b) (1), supra, disposes of petitioner's contention that the depreciated cost of the old bottling plant be added to the cost of its new plant for the purposes of depreciation. Decision will be entered for the respondent. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind. - (1) Property Held for Productive Use or Investment. - No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. ↩
2. SEC. 711. EXCESS PROFITS NET INCOME. (b) Taxable Years in Base Period. - (1) General Rule and Adjustments. - The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)): (E) Casualty, Demolition, and Similar Losses. - Deductions under section 23 (f) for losses arising from fires, storms, shipwreck, or other casualty, or from theft, or arising from the demolition, abandonment or loss of useful value of property, not compensated for by insurance or otherwise, shall not be allowed.↩